UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ADRIENNA H.,[1] | Case No. 2:22-cv-05487-GJS |
| Plaintiff | |
| v. | **MEMORANDUM OPINION AND ORDER** |
| KILOLO KIJAKAJI, Acting Commissioner of Social Security, | |
| Defendant. | |

## I.   PROCEDURAL HISTORY

Plaintiff Adrienna H. ("Plaintiff") filed a complaint seeking review of the decision of the Commissioner of Social Security denying her application for Supplemental Security Income ("SSI").  The parties filed consents to proceed before the undersigned United States Magistrate Judge [Dkts. 12 and 21] and briefs [Dkts. 17 ("Pl. Br."), 20 ("Def. Br.") & 23 ("Reply")] addressing disputed issues in the case.  The matter is now ready for decision.  For the reasons set forth below, the

---

[1]     In the interest of privacy, this Order uses only the first name and the initial of the last name of the non-governmental party.

1   Court finds that this matter should be affirmed.

2

3                 **II.   ADMINISTRATIVE DECISION UNDER REVIEW**

4           Plaintiff filed an SSI application on July 30, 2016, alleging disability

5   beginning March 23, 2015.  [Dkt. 14, Administrative Record ("AR") 99, 268-73.]

6   Plaintiff's application was denied at the initial level of review and on

7   reconsideration.  [AR 99, 197-201, 203-08.]  A hearing was held before

8   Administrative Law Judge Elizabeth R. Lishner ("the ALJ") on January 31, 2019.

9   [AR 99, 113-51.]

10          On May 3, 2019, the ALJ issued an unfavorable decision applying the five-

11  step sequential evaluation process for assessing disability.  [AR 99-108]; *see* 20

12  C.F.R. § 416.920(b)-(g)(1).  At step one, the ALJ determined that Plaintiff had not

13  engaged in substantial gainful activity since July 30, 2016, the application date.

14  [AR 101.]  At step two, the ALJ determined that Plaintiff has the following severe

15  impairments:  degenerative disc disease of the lumbar spine; opioid and

16  benzodiazepine use disorder; major depressive disorder; and factitious disorder.

17  [AR 101.]  At step three, the ALJ determined that Plaintiff does not have an

18  impairment or combination of impairments that meets or medically equals the

19  severity of one of the impairments listed in Appendix I of the Regulations.  [AR

20  102]; *see* 20 C.F.R. Pt. 404, Subpt. P, App. 1.  The ALJ found that Plaintiff has the

21  residual functional capacity ("RFC") to perform light work, as defined in 20 C.F.R.

22  § 416.967(a), except she can only perform work that can be completed by the end of

23  the day, is limited to occasional postural activities, reaching overhead with the

24  bilateral upper extremities, and contact with co-workers and supervisors, and is

25  precluded from climbing ladders, ropes, and scaffolds, exposure to unprotected

26  heights, heavy machinery and hazards, public contact, and fast-paced assembly

27  lines.  [AR 103.]  At step four, the ALJ determined that Plaintiff has no past relevant

28  work.  [AR 107.]  At step five, the ALJ determined that Plaintiff is capable of

1    making a successful adjustment to other work that exists in significant numbers in
2    the national economy, including work as an electronics worker, packager, and
3    sorter.  [AR 107-08.]  Based on these findings, the ALJ concluded that Plaintiff was
4    not disabled since the application date, July 30, 2016.  [AR 108.]
5        The Appeals Council denied review of the ALJ's decision on May 11, 2020.
6    [AR 15-21.]  This action followed.
7        Plaintiff raises the following issues challenging the ALJ's findings and
8    determination of non-disability:

9        1.    The ALJ erred in finding that opioid and benzodiazepine use disorder
10              was a severe impairment and the Appeals Council failed to properly
11              address newly submitted evidence.

12       2.    The ALJ failed to properly evaluate the medical evidence.

13       3.    The ALJ erred in determining that Plaintiff can perform other work that
14             exists in significant numbers in the economy and the ALJ erred in assessing
15             Plaintiff's RFC.

16       The Commissioner asserts that the ALJ's decision is supported by substantial
17   evidence and should be affirmed.

18
19                      **III.    GOVERNING STANDARD**

20       Under 42 U.S.C. § 405(g), the Court reviews the Commissioner's decision to
21   determine if:  (1) the Commissioner's findings are supported by substantial
22   evidence; and (2) the Commissioner used correct legal standards.  *See Carmickle v.*
23   *Comm'r Soc. Sec. Admin.*, 533 F.3d 1155, 1159 (9th Cir. 2008); *Brewes v. Comm'r*
24   *Soc. Sec. Admin.*, 682 F.3d 1157, 1161 (9th Cir. 2012).  "Substantial evidence … is
25   'more than a mere scintilla' … [i]t means – and only means – 'such relevant
26   evidence as a reasonable mind might accept as adequate to support a conclusion.'"
27   *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (citations omitted); *Gutierrez v.*
28   *Comm'r of Soc. Sec.*, 740 F.3d 519, 522 (9th Cir. 2014) ("[s]ubstantial evidence is

3

1  more than a mere scintilla but less than a preponderance") (internal quotation marks
2  and citation omitted).
3       The Court will uphold the Commissioner's decision when "'the evidence is
4  susceptible to more than one rational interpretation.'"  *Burch v. Barnhart*, 400 F.3d
5  676, 681 (9th Cir. 2005) (quoting *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir.
6  1989)).  However, the Court may review only the reasons stated by the ALJ in the
7  decision "and may not affirm the ALJ on a ground upon which he did not rely."
8  *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007).  The Court will not reverse the
9  Commissioner's decision if it is based on harmless error, which exists if the error is
10 "inconsequential to the ultimate nondisability determination, or that, despite the
11 error, the agency's path may reasonably be discerned."  *Brown-Hunter v. Colvin*,
12 806 F.3d 487, 492 (9th Cir. 2015) (internal quotation marks and citations omitted).

13
14                          **IV.    DISCUSSION**
15   **A.  Step Two and New Evidence Submitted to the Appeals Council**
16          **1.  Step Two**
17      Plaintiff contends the ALJ erred at step two in finding that opioid and
18 benzodiazepine use disorder was a severe impairment.  [Pl. Br. at 6-7; AR 101.]
19      At step two, "an impairment is found not severe ... when medical evidence
20 establishes only a slight abnormality or a combination of slight abnormalities which
21 would have no more than a minimal effect on an individual's ability to work."
22 *Yuckert v. Bowen*, 841 F.2d 303, 306 (9th Cir. 1988); *Smolen v. Chater*, 80 F.3d
23 1273, 1290 (9th Cir. 1996) ("the step-two inquiry is a de minimis screening device
24 to dispose of groundless claims").
25      Here, there was sufficient evidence to sustain the ALJ's finding that opioid
26 and benzodiazepine use disorder was a severe impairment.  [AR 101, 416.]  In April
27 2017, following an examination of Plaintiff, Dr. Gunaratnam opined that opioid and
28 benzodiazepine use disorder was "likely," noting that Plaintiff admitted she had

4

misused benzodiazepine (Xanax) and was not taking other medications previously prescribed.  [AR 416-17.]  Thus, substantial evidence supports the ALJ's step two determination.

Additionally, Plaintiff has failed to show that she was harmed by the alleged error at step two.  When a disability claim involves substance abuse, the ALJ must first conduct the general five-step sequential evaluation without determining the impact of the substance abuse on the claimant.  *See Bustamante v. Massanari*, 262 F.3d 949, 955 (9th Cir. 2001); 20 C.F.R. § 416.935 ("If we find that you are disabled and have medical evidence of your drug addiction or alcoholism, we must determine whether your drug addiction or alcoholism is a contributing factor material to the determination of disability.").  If the ALJ finds that the claimant is not disabled under the five-step inquiry, the analysis proceeds no further and the claimant is not entitled to benefits.  *See Bustamante*, 262 F.3d at 955.  But if the ALJ finds that the claimant is disabled under the five-step inquiry and there is evidence of drug addiction or alcoholism, the ALJ should determine if the claimant would still be disabled if she stopped using drugs or alcohol.  *Id.*; 20 C.F.R. § 416.935.

Here, the ALJ determined that Plaintiff was not disabled at step five of the sequential analysis.  [AR 99-108.]  Given this finding of nondisability, the ALJ did not consider whether substance abuse was a contributing factor material to Plaintiff's alleged disability.  Thus, any arguable error in finding that opioid and benzodiazepine use disorder was a severe impairment was harmless.  *See Brown-Hunter*, 806 F.3d at 492.

### 2.  New Evidence

Plaintiff contends that the Appeals Council failed to properly consider or acknowledge new medical evidence submitted after the ALJ rendered the decision.  [Pl. Br. at 6-8; AR 22-53.]

The Appeals Council "will review a case if ... [it] receives additional evidence

that is new, material, and relates to the period on or before the date of the hearing decision, [ ] there is a reasonable probability that the additional evidence would change the outcome of the decision," and there is "good cause" for not submitting the new evidence earlier.  20 C.F.R. § 416.1470(a)(5), (b).  If the Appeals Council fails to properly "consider" new and material evidence that satisfies the requirements of section 416.1470, a remand for further administrative proceedings is appropriate.  *See Taylor v. Comm'r of Soc. Sec. Admin.*, 659 F.3d 1228, 1233 (9th Cir. 2011).

The Ninth Circuit distinguishes between new evidence that the Appeals Council formally "considered" and exhibited in the record and evidence that the Appeals Council merely "looked at" but did not exhibit in the record.  *See Amor v. Berryhill*, 743 F. App'x 145, 146 (9th Cir. 2018).  Evidence "considered" by the Appeals Council becomes part of the administrative record, as "evidence upon which the findings and decision complained of are based" and must be considered by the Court "when reviewing the Commissioner's final decision for substantial evidence."  *Brewes*, 682 F.3d at 1162-1163; *Amor*, 743 F. App'x at 146 ("[W]e may review evidence submitted to and considered by the Appeals Council as part of the administrative record.").  But when the Appeals Council only "looked at" the new evidence and concluded it did not meet the standard for consideration under section 416.1470, the new evidence does "not become part of the record" and the Court "may not consider it."  *Amor*, 743 F. App'x at 146.

Plaintiff submitted to the Appeals Council medical records, dated September 16, 2016 through August 27, 2019, which were not included in the record before the ALJ.  [AR 22-72, 78-95, 152-78.]  The Appeals Council did not consider or exhibit any of the new medical records, but it looked at and offered reasons for dismissing some of the new records.  [AR 16.]  The Appeals Council stated:

> You submitted medical records from Blue California dated
> January 25, 2019 to March 26, 2019 (29 pages).  We find

1
2

this evidence does not show a reasonable probability that it would change the outcome of the decision. We did not exhibit this evidence.

3
4
5
6
7

You submitted medical records from Blue California dated May 21, 2019 to August 27, 2019 (18 pages).  The [ALJ] decided your case through May 3, 2019.  This additional evidence does not relate to the period at issue.  Therefore, it does not affect the decision about whether you were disabled beginning or on before May 3, 2019.

8
9

If you want us to consider whether you were disabled after May 3, 2019, you need to apply again.

10

[AR 16.]

11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

        Plaintiff contends that it was error for the Appeals Council to fail to mention or offer any reasons for disregarding 30 pages of new medical records pertaining to treatment from September 16, 2016 through December 28, 2018.  [Pl. Br. at 7-8; AR 22-53.]  However, this Court "may not consider" these records, as the Appeals Council's decision shows that it did not consider or exhibit the new evidence in the record.  *Amor*, 743 F. App'x at 146; [AR 16.]  While the Appeals Council did not indicate that it looked at the records at issue, "the Appeals Council [was] not required to make any particular evidentiary finding" when rejecting new evidence presented after the ALJ's unfavorable decision.  *Gomez v. Chater*, 74 F.3d 967, 972 (9th Cir. 1996); *see also Palomares v. Astrue*, 887 F. Supp. 2d 906, 915-16 (N.D. Cal. 2012) ("the sufficiency of the Appeals Council's perfunctory explanation" for rejecting the treating physician's opinion "will not be considered as a grounds for reversal").  Moreover, Plaintiff has failed to show there is a "reasonable probability" that the new evidence would impact the decision denying benefits or that there was "good cause" for not submitting the evidence earlier.  *See* 20 C.F.R. § 416.1470(a)(5), (b).  Consequently, Plaintiff fails to demonstrate that she is entitled to reversal or remand based on the Appeals Council failure to address the new

1   evidence.  *See* 20 C.F.R. § 416.1470.

2   **B.  Medical Evidence**

3   Plaintiff contends the ALJ erred by attributing "little weight" to the opinion of

4   her treating physician, Jos Santz, M.D.  [Pl. Br. at 8-13; AR 106-07.]

5   Under the pre-2017 regulations that apply to Plaintiff's claim, treating

6   medical sources are generally given more weight than non-examining sources due to

7   a treating physician's heightened familiarity with a claimant's condition.  *See* 20

8   C.F.R. § 416.927(a)(2); *Lester v. Chater*, 81 F.3d 821, 830-31 (9th Cir. 1995)

9   (superseded by statute on other grounds) (distinguishing among three types of

10  physicians: (1) treating physicians (who treat a claimant), (2) examining physicians

11  (who examine but do not treat a claimant), and (3) non-examining physicians (who

12  do not examine or treat a claimant).  "When presented with conflicting medical

13  opinions, the ALJ must determine credibility and resolve the conflict."  *Batson v.*

14  *Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004).

15  If a treating physician's opinion is not "well-supported by medically

16  acceptable clinical and laboratory diagnostic techniques" or is "inconsistent with the

17  other substantial evidence in [the] case record," the ALJ need not give it controlling

18  weight.  20 C.F.R. § 404.1527(c)(2); *see also Tonapetyan v. Halter*, 242 F.3d 1144,

19  1149 (9th Cir. 2001) ("When confronted with conflicting medical opinions, an ALJ

20  need not accept a treating physician's opinion that is conclusory and brief and

21  unsupported by clinical findings.").  If medical evidence contradicts a treating

22  physician's opinion, the ALJ must provide "'specific and legitimate reasons'

23  supported by substantial evidence in the record" for rejecting that physician's

24  opinion.  *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998) (quoting *Lester*, 81

25  F.3d at 830); *see also Orn*, 495 F.3d at 631 (explaining that when rejecting a treating

26  physician's opinion, "the ALJ must do more than offer his conclusions.  He must set

27  forth his own interpretations and explain why they, rather than the doctors', are

28  correct.").

Dr. Santz was Plaintiff's treating physician for various musculoskeletal and other complaints. [AR 105.] In February 2019, Dr. Santz completed an assessment of Plaintiff's ability to do work-related activities. [AR 525-30.] Dr. Santz found that Plaintiff could lift and carry less than 10 pounds, sit less than two hours in an eight-hour workday, and stand and walk less than two hours in an eight-hour workday. [AR 525.] Dr. Santz also reported that Plaintiff uses a cane or walker to ambulate, has environmental restrictions and impaired ability to reach, handle, finger, feel, push/pull, kneel, crawl and ambulate, is precluded from performing postural activities (twisting, stooping, crouching, and climbing stairs and ladders), would be absent from work about three times a month due to her impairments and treatment, and must be able to walk around every 45 minutes for 10 minutes at a time, shift at will from sitting or standing/walking, change positions after sitting or standing five minutes, and lie down every 20 minutes. [AR 525-29.]

The ALJ found that the "extreme limitations" described in Dr. Santz's assessment were not supported by the objective medical record. [AR 105-06.] The ALJ noted that "mild" medical imaging findings of Plaintiff's spine and "normal" EMG and NCV studies of Plaintiff's left upper extremity contradicted Dr. Santz's assessment. [AR 102, 105, 107, 337, 339, 508, 511, 519.] The ALJ also noted that a June 2016 x-ray of Plaintiff's cervical spine was unremarkable, except for straightening of the cervical lordosis and there were no physical therapy treatment notes or imaging records of Plaintiff's right knee. [AR 102, 105, 339.] An ALJ may discredit a treating physician's opinion that is unsupported by the record as a whole or by objective medical findings. *Batson*, 359 F.3d at 1195; *Tonapetyan*, 242 F.3d at 1149; *see also Kohansby v. Berryhill*, 697 F. App'x 516, 517 (9th Cir. 2017) ("objective findings such as MRI and x-ray reports and treatment notes support the rejection of [the treating doctor's] opinion that [the claimant] could not perform 'sedentary work'"); *Lopez v. Berryhill*, No. 1:17-CV-01501-BAM, 2019 WL 1325862, at *6 (E.D. Cal. Mar. 25, 2019) (ALJ's finding that treating doctor's

1    opinion was contradicted by "mild degenerative findings on imaging" was a specific

2    and legitimate reason for discounting doctor's opinion).

3            The ALJ also questioned whether Dr. Santz's treatment notes accurately

4    reflected Plaintiff's condition at the time of her examinations.  [AR 105, 107.]  The

5    ALJ found that many of Dr. Santz's records contain language that appeared to have

6    been copied and pasted repeatedly, which cast doubt on the reliability of Dr. Santz's

7    opinion and Plaintiff's reports of extreme musculoskeletal pain.  [AR 105, 107.]

8    The ALJ also noted that Dr. Santz relied on Plaintiff's complaints of pain and

9    reported side effects from medications in prescribing Norco, an opioid, even though

10   Plaintiff failed to follow through with various treatment recommendations.  [AR

11   102, 105, 453, 505.]  As the record supports the ALJ's decision to discount

12   Plaintiff's subject symptom testimony, it was reasonable for the ALJ to disregard

13   Dr. Santz's opinion to extent it was premised on Plaintiff's subjective complaints.[2]

14   *See Tonapetyan*, 242 F.3d at 1149; *Fair v. Bowen*, 885 F.2d 597, 605 (9th Cir.

15   1989).

16           Plaintiff further claims that the ALJ erred in evaluating the opinion of the

17   examining physician, Dr. Kumar.  [Pl. Br. at 13.]  However, Dr. Kumar was not able

18   to complete Plaintiff's evaluation or assess Plaintiff's functional limitations due to

19   Plaintiff's poor cooperation during the examination.  [AR 519.]  Because Dr. Kumar

20   did not have the opportunity to review Plaintiff's treatment records supporting some

21   physical limitations, the ALJ assigned "some weight" to Dr. Kumar's opinion.  [AR

22   106.]  Plaintiff has failed to demonstrate that the ALJ erred in the evaluation of Dr.

23   Kumar's opinion or that she was harmed by the alleged error.

24   / / /

25   / / /

26   _____

27

28   [2]     Plaintiff does not appear to challenge the ALJ's rejection of her subjective complaints.

                                                    10

1    **C.  Other Work and RFC**

2        **1.  Overhead Reaching Limitation**

3        Plaintiff contends that the reaching demands of the alternative jobs identified

4    by the vocational expert exceed her abilities.  [Pl. Br. at 13-14.]

5        At step five, the Commissioner has the burden of establishing, through the

6    testimony of a vocational expert or by reference to the Medical-Vocational

7    Guidelines, that the claimant can perform alternative jobs that exist in substantial

8    numbers in the national economy.  *See Tackett v. Apfel*, 180 F.3d 1094, 1101 (9th

9    Cir. 1999); *Bruton v. Massanari*, 268 F.3d 824, 827 n.1 (9th Cir. 2001).  When

10   using the testimony of a vocational expert at step five, "the VE must identify a

11   specific job or jobs in the national economy having requirements that the claimant's

12   physical and mental abilities and vocational qualifications would satisfy."

13   *Osenbrock v. Apfel*, 240 F.3d 1157, 1162-1163 (9th Cir. 2001).

14       The Commissioner "routinely relies" on the Dictionary of Occupational Titles

15   ("DOT") "in evaluating whether the claimant is able to perform other work in the

16   national economy."  *Terry v. Sullivan*, 903 F.2d 1273, 1276 (9th Cir. 1990); *see*

17   *Pinto v. Massanari*, 249 F.3d 840, 845 (9th Cir. 2001) ("[T]he best source for how a

18   job is generally performed is usually the [DOT].").  Should an "apparent or

19   obvious" conflict arise between a VE's testimony regarding the claimant's ability to

20   perform alternative jobs and the DOT's description of those jobs, "the ALJ must ask

21   the expert to reconcile the conflict" and determine whether the VE's explanation is

22   reasonable before relying on the VE's testimony.  *Gutierrez v. Colvin*, 844 F.3d 804,

23   807-08 (9th Cir. 2016); *see Massachi v. Astrue*, 486 F.3d 1149, 1153-1154 (9th Cir.

24   2007) ("[T]he ALJ must first determine whether a conflict exists.  If it does, the ALJ

25   must then determine whether the vocational expert's explanation for the conflict is

26   reasonable and whether a basis exists for relying on the expert rather than the

27   [DOT].").

28       Plaintiff correctly asserts that the DOT classifies each of the three jobs

11

1   identified by the vocational expert as requiring "frequent reaching," that is, reaching

2   from one-third to two-thirds of the time.  [Pl. Br. at 14]; *see* DOT 726.687-010

3   (electronics worker); DOT 726.687-042 (packaging); DOT 222.687-014 (garment

4   sorter).  Plaintiff contends that because she is limited to occasional overhead

5   reaching with the bilateral upper extremities and "the DOT does not delineate

6   between overhead or outward reaching," a conflict exists between the vocational

7   expert's testimony that she is able to perform the three alternative jobs and the

8   DOT's description of those jobs.  [Pl. Br. at 13-14.]

9           Plaintiff has failed to establish any apparent or obvious conflict between the

10  vocational expert's testimony and the DOT.  "While 'reaching' connotes the ability

11  to extend one's hands and arms 'in any direction,' [ ] not every job that involves

12  reaching requires the ability to reach overhead."  *Gutierrez*, 844 F.3d at 808

13  (internal quotation marks omitted) (holding that no apparent or obvious conflict

14  existed between the vocational expert's testimony a claimant who could not reach

15  above shoulder level with her dominant right arm could perform the DOT job of

16  cashier, which requires "frequent reaching," … [g]iven how uncommon it is for

17  most cashiers to have to reach overhead"); *Ballesteros v. Colvin*, No. CV 15-0543-

18  JPR, 2016 WL 3381280, at *15 (C.D. Cal. June 13, 2016), *judgment entered*, No.

19  CV 15-0543-JPR, 2016 WL 3398397 (C.D. Cal. June 13, 2016) ("But just because

20  the term 'reaching' includes extending the arms in 'any' direction—such as up,

21  down, out, right and left,—that does not mean that a job that involves reaching

22  necessarily requires extending the arms in all of those directions.").  Moreover, there

23  is nothing in the DOT's job descriptions of the three jobs identified or in the record

24  suggesting that more than occasional overhead reaching would be required.  *See*

25  DOT 726.687-010 (stating that an electronics worker cleans, trims, or prepares

26  components or parts for assembly by other workers); DOT 726.687-042 (stating that

27  the sealer, semiconductor packaging position involves sealing solder-coated lids or

28  tops on semiconductor packages, using heated chuck or automatic furnace, and

12

1   maintaining production records); DOT 222.687-014 (stating that a garment sorter

2   sorts finished garments according to lot and size numbers recorded on tags and

3   labels attached to garments, may fold and package garments in boxes and bags, and

4   may iron garments).  As no apparent or obvious conflict exists between the VE's

5   testimony and the DOT, the ALJ did not err in failing to inquire about or resolve any

6   conflict.  *See Gutierrez*, 844 F. 3d at 808 (an ALJ must "ask follow up questions of a

7   vocational expert when the expert's testimony is either obviously or apparently

8   contrary to the [DOT], but the obligation doesn't extend to unlikely situations or

9   circumstances.").

10                    **2.  Number of Available Jobs**

11          Plaintiff challenges the vocational expert's testimony regarding the number of

12   alternative jobs available.  [Pl. Br. at 15.]  The vocational expert testified there were

13   35,000 electronic worker positions, 80,000 packager positions, and 60,000 sorter

14   jobs available in the national economy.  [AR 108, 146-47.]  Plaintiff claims that the

15   vocational expert's testimony was unreliable and in conflict with information from

16   SkillTRAN's Job Browser Pro software.  [Pl. Br. at 14-16.]

17          The Ninth Circuit has recognized that an ALJ may have a duty to address "a

18   conflict between the [vocational expert's] job-number estimates and the claimant's

19   job-number estimates."  *Wischmann v. Kijakazi*, 68 F.4th 498, 505 (9th Cir. 2023).

20   However, "[t]hat duty arises only where the purportedly inconsistent evidence is

21   both significant and probative, as opposed to 'meritless or immaterial.'"  *Id.*

22   (quoting *Kilpatrick v. Kijakazi*, 35 F.4th 1187, 1193-94 (9th Cir. 2022)).

23          Here, Plaintiff failed to preserve her challenge to the vocational expert's job-

24   number estimates by objecting at the hearing or submitting evidence of the Job

25   Browser Pro job-number estimates to the Appeals Council to be included in the

26   record.  *See Wischmann*, 68 F.4th at 506.  Moreover, Plaintiff has not presented any

27   significant or probative evidence to rebut the vocational expert's testimony.  *Id.* at

28   505.  Plaintiff merely claims that the Job Browser Pro software suggested a lower

                                          13

1    number of positions available in the national economy for the electronics worker,

2    packager, and sorter jobs, without offering any evidentiary support.  [Pl. Br. at 14.]

3    Plaintiff's "bare assertions," without more, "do not give rise to the material

4    inconsistency that the ALJ is required to resolve."  *Wischmann*, 68 F.4th at 507-08.

5        Plaintiff also complains that the vocational expert did not address whether the

6    limitation to occasional overhead reaching would reduce the number of jobs

7    available in the economy.  [Pl. Br. at 15.]  However, the ALJ's hypothetical question

8    to the vocational expert adequately addressed all of Plaintiff's limitations, as set

9    forth in the RFC.  [AR 103, 146-47.]  In response to the hypothetical, the vocational

10   expert eliminated jobs that would have required more than occasional reaching

11   overhead with the bilateral upper extremities and estimated the number of

12   electronics worker, packager and sorter jobs that were available in the economy.

13   [AR 146-47.]  The vocational expert's "recognized expertise" provided "the

14   necessary foundation" for his testimony regarding the number of relevant jobs in the

15   national economy.  *Bayliss v. Barnhart*, 427 F.3d 1211, 1218 (9th Cir. 2005).

16   Accordingly, substantial evidence supported the ALJ's finding that Plaintiff could

17   perform jobs that exist in significant numbers in the economy.  *See id*. ("An ALJ

18   may take administrative notice of any reliable job information, including

19   information provided by a VE.") (citing *Johnson v. Shalala*, 60 F.3d 1428, 1435 (9th

20   Cir. 1995)).

21                    **3.  RFC**

22       Plaintiff contends that the RFC assessed by the ALJ failed to include her use

23   of a cane and walker, as prescribed by Dr. Santz.  [Pl. Br. at 15-16.]  However, as

24   discussed above, the ALJ properly discounted Dr. Santz's opinion.  Thus, the ALJ

25   had no obligation to account for Dr. Santz's opinion in the RFC.  *See Batson*, 359

26   F.3d at 1197 ("the ALJ was not required to incorporate evidence from the opinions

27   of [the claimant's] treating physicians, which were permissibly discounted" in

28   determining the claimant's RFC).

# V.   CONCLUSION

For all of the foregoing reasons, **IT IS ORDERED** that the decision of the Commissioner finding Plaintiff not disabled is AFFIRMED

**IT IS SO ORDERED.**

DATED:  June 20, 2023

_____
GAIL J. STANDISH
UNITED STATES MAGISTRATE JUDGE